## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOTHER DISTRICT OF NEW YORK

| | |
|---|---|
| Luisset Figueroa and Jean Joseph, individually and on behalf of all others similarly situated, | Civil Action No. |
| | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| | **JURY TRIAL DEMANDED** |
| v. | |
| BlendJet, Inc., | |
| Defendant. | |

Plaintiffs Luisset Figueroa and Jean Joseph ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant BlendJet, Inc. ("Defendant"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on their personal knowledge.

### NATURE OF THE ACTION

1.      Defendant manufactures, markets, and sells its "BlendJet2" (the "Product") throughout the United States, including in New York.  Defendant markets its Product in a systematically misleading manner by misrepresenting the capabilities of the Product, which it manufactures using substandard or inferior materials (the "Defect").

2.      As discussed in greater detail below, the Defect causes the Product to break or otherwise stop working within a short period of time. This is caused by the substandard quality of the Product's blades (which become disfigured, shatter, or completely detach); its charging cables (which are prone to melting); and its battery (which makes the Product overheat and at times catch fire).

3.      Defendant is aware of the Product's Defect based on the sheer number of negative reviews and complaints to the U.S. Consumer Product Safety Commission ("CPSC"). Despite this, Defendant takes advantage of consumers by misrepresenting that the Product has "[b]ig blender performance" that "powers through anything in 20 seconds flat: ice, frozen fruit, leafy greens & more." Some of Defendant's advertisements are depicted below, by way of illustration:





4.      Unbeknownst to consumers, however, Defendant's Product systematically fails to meet its advertised functions, including, but not limited, to, "crushing ice" or any other solid food item. Furthermore, no matter the way in which the Defect manifests itself, it is all the result of Defendant's common conduct and shoddy manufacturing. And regardless of the specific manifestation, the Defect renders the Product unsuitable for its principal and intended purpose: blending ice, fruits, nuts, and vegetables.

5.      Had Plaintiffs been aware that Defendant's representations were false or that the Product suffered from the Defects, they would not have purchased the Product or would have paid less for it. Furthermore, Plaintiffs and the proposed class members paid a substantial premium for Defendant's Product because its price was inflated as a result of the Product's Defects and Defendant's false and misleading claims regarding its functionality and capability.

6.      As a result of its deceptive conduct, Defendant is, and continues to be, unjustly enriched at the expense of their consumers.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendant.

8.      This Court has personal jurisdiction over Defendant because it conducts substantial business within New York, including the sale, marketing, and advertising of the Product. Furthermore, a substantial portion of the events giving rise to Plaintiffs' claims occurred in this State, including Plaintiffs' purchases.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant conducts substantial business in this District, and a substantial part of the events giving rise to Plaintiffs' claims took place within this District.

## PARTIES

10.      Plaintiff Luisset Figueroa is a citizen of New York, who resides in Patterson, New York. Plaintiff Figueroa purchased Defendant's Product online for her personal use while residing in Patterson, New York, within the applicable statute of limitations, with her most recent purchase taking place on or about December of 2021 from Defendant's website. Prior to making her purchase, Plaintiff Figueroa saw that the Product was labeled and marketed as being able to "power[] through anything in 20 seconds flat: ice, frozen fruit, leafy greens & more" and that its battery charge "[l]asts for 15+ blends." Plaintiff Figueroa saw Defendant's representation prior to and at the time of her purchase and understood it as a representation and warranty that the Product could indeed blend ice and other solid food products within "20 seconds flat" and that it would be able to hold a battery charge for at least 15 blends. To her dismay, however, the Product that Plaintiff Figueroa purchased from Defendant malfunctioned within a short time after blending a smoothie composed of regular vegetables and almond milk. At that time, Plaintiff Figueroa heard the Product make an exceedingly loud noise and she noticed that a shard of the Product's blade broke into the smoothie. Scared for her wellbeing, Plaintiff Figueroa stopped using the Product and decided not to purchase it again based on its utter failure to perform as advertised and its inherent health hazards. Plaintiff Figueroa relied on Defendant's representations and warranties in deciding to purchase the Product. Accordingly, those representations and warranties were part of the basis of her bargain, in that she would not have purchased the Product on the same terms, if at all, had she known that the representations were

not true. In making her purchase, Plaintiff Figueroa also paid a substantial price premium due to Defendant's false and misleading representations. Plaintiff Figueroa, however, did not receive the benefit of her bargain because the Product was not, in fact, capable of blending through "anything in 20 seconds flat" or providing "15+ blends" after each charge. Finally, had Plaintiff Figueroa known that Defendant's Product contained the Defect, she would not have purchased it at all.

11.     Plaintiff Jean Joseph is a citizen of New York, who resides in Brooklyn, New York. Plaintiff Joseph purchased Defendant's Product online for his personal use while residing in Brooklyn, New York, within the applicable statute of limitations, with his most recent purchase taking place on or about March of 2023. Prior to making his purchases, Plaintiff Joseph saw that the Product was labeled and marketed as being able to "power[] through anything in 20 seconds flat: ice, frozen fruit, leafy greens & more" and that its battery charge "[l]asts for 15+ blends." Plaintiff Joseph saw Defendant's representation prior to and at the time of his purchases and understood it as a representation and warranty that the Product could indeed blend ice and other solid food products within "20 seconds flat" and that it would be able to hold a battery charge for at least 15 blends. Initially, Plaintiff Joseph became frustrated when Defendant's Products malfunctioned when using them to blend frozen foods, which he had to blend well over 20 seconds. In addition to its inability to "power through anything" (or, at minimum, basic food items) the Products that Plaintiff Joseph purchased from Defendant provided substantially less than 15 blends after each charge, as promised. At first, Plaintiff Joseph believed that the Product' malfunctioning was the result of one-off manufacturing flukes. Having given Defendant's Products the benefit of the doubt, however, Plaintiff Joseph stopped purchasing them altogether after their continued failure to perform as advertised when each Product stopped working

altogether within a short period of time, through no fault of his own. Plaintiff Joseph relied on these representations and warranties in deciding to purchase the Product. Accordingly, those representations and warranties were part of the basis of his bargains, in that he would not have purchased the Product on the same terms, if at all, had he known that the representations were not true. In making his purchases, Plaintiff Joseph also paid a substantial price premium due to Defendant's false and misleading representations. Plaintiff Joseph, however, did not receive the benefit of his bargains because the Product was not, in fact, capable of blending through "anything in 20 seconds flat" or providing "15+ blends" after each charge. Finally, had Plaintiff Joseph known that Defendant's Product contained the Defect, he would not have purchased them at all.

12.     Defendant BlendJet, Inc. is a Delaware corporation with its principal place of business located in Benicia, California. At all relevant times, Defendant manufactured, packaged, labeled, advertised, marketed, distributed and/or sold the Product in New York and throughout the United States.

## GENERAL ALLEGATIONS

13.     In recent years, consumer demand for portable blenders has skyrocketed as consumers have turned to lightweight blenders that provide the versatility to be used on the go. Unlike traditional household blenders that require a power outlet to be operational, portable blenders use rechargeable batteries and jars that can also be used as a cup.

14.     Defendant has capitalized on this consumer demand and is now a leading industry player in selling portable blenders, including BlendJet 2 (the "Product"). Through its marketing materials, Defendant prominently represents, among other things, that the Product is made with "[p]atented TurboJet™ technology" that "powers through anything in 20 seconds flat: ice, frozen

6

fruit, leafy greens & more."[1] Defendant further represents that the Product "[l]asts for 15+

blends" through its USB-C charging port.[2]

15.    Despite those representations, however, Defendant's Product systematically fails

to blend through ice and other hard food items and fails to hold charge anywhere near the

advertised "15+ blends."

16.    Defendant's failure to meet its representations is hardly surprising due to the poor

design and workmanship of the Product. Specifically, the Product's battery, charging cable, and

blending blade assembly are poorly designed and use substandard materials—causing the

Product to malfunction, and, in some instances, pose serious hazards (the "Defect").

17.    As outlined in a recent letter sent by Consumer Reports, a nonprofit organization,

to the U.S. Consumer Product Safety Commission ("CPSC"), the Product's blades and assembly

shaft are prone to deformation, or even breaking off, during routine use of the Product when

blending frozen products and other solid materials (such as peanuts or almonds).[3] For instance,

one consumer lodged a complaint with the CPSC stating that "tips of the blending blades broke

off," and they "possibly swallowed one of them."[4] Yet another consumer lodged a complaint to

the CPSC, stating that the Product "exploded" while it was charging, and that "the fire chief

identified the rechargeable battery as the cause of the explosion," as depicted below"[5]

---

[1] www.walmart.com/ip/BlendJet-2-the-Original-Portable-Blender-20-oz-
Black/519070976?athbdg=L1600&from=/search (last accessed September 6, 2023);
www.target.com/p/blendjet-2-portable-blender-black/-/A-83855175 (last accessed September 6,
2023).
[2] *Id.*
[3] www.advocacy.consumerreports.org/research/cr-letter-to-cpsc-regarding-reported-issues-
connected-to-blendjet-2/ (last accessed September 6, 2023).
[4] www.saferproducts.gov/PublicSearch/Detail?ReportId=4161791 (last accessed September 6,
2023).
[5] www.saferproducts.gov/PublicSearch/Detail?ReportId=4177225(last accessed September 6,
2023).

///
///
///



18.     These are not one-off incidents. Other consumer complaints regarding the

Product's propensity to overheat, riddle the review sections of online retailers such as Walmart

and Target. The following reviews are but a sampling of the numerous scathing reviews from

verified purchasers who bought the Product at Walmart.com (which Defendant constantly

monitors):[6]

_____

[6] www.walmart.com/reviews/product/519070976?filter=1 (last accessed September 6, 2023).

★☆☆☆☆ **Verified Purchaser**                           8/25/2023

**DISAPPOINTING ALL AROUND**

Broke on the first day. Was so excited to try this for my protein shakes and the minute I added fruit, it broke. I tried charging it up to make sure it wasn't just a battery issue but when I went to wash the cup and put it back together, the cup got caught on the wrong thread and now the cup is stuck sideways on the blender and I can't get it off. Have had my dad and boyfriend help me and no one can get it back off. Waste of money.



Mary
👍 0    👎 0

---

★☆☆☆☆ **Verified Purchaser**                           8/5/2023

**Unfulfilled Promises...real stress inducer**

I liked the hype, the promises. BUT...the REALITY is....if I would have known the things that were not told about this product I would never have purchased it. NEVER. I will explain: I follow directions to a T. I use it exclusively for making smoothies. The "frozen" berries are notorious at clogging the blades and therefore stopping the unit. The problem lies in the tubular container which is to narrow at the bottom. I have to throw the whole contents in my little cheap blender, push the button and voila a perfect smoothie! Why I thought I had to purchase this was just because of all the hype. My mistake, but I am far wiser now. I have gone back to using my trusted cheap unit that NEVER causes irritation to me...

Sakuralin
👍 2    👎 0

---

★☆☆☆☆ **Verified Purchaser**                           8/11/2023

**Very disappointing**

I bought this as a gift for my roommate, and after using it for one week, its started leaking and making a mess. I'm in the process of finding out how to send it back. I was very disappointed as my roommate loved it the first week!!

GrandmaCathie
👍 0    👎 0

---

★☆☆☆☆ **Verified Purchaser**                           8/14/2023

It was great the 2 times I used it. But then the blend jet broke never worked again. Don't bother spending the money they're not worth the money 2 one in 1 years time.

Helen
👍 0    👎 0

---

★☆☆☆☆ **Verified Purchaser**                           7/1/2023

**Waste of money**

I am not sure if this blender worth it's price. This is my third one within a year, don't get me wrong i am gentle with my items. The first one the cup just cracked, the second one the motor just wouldn't stopped blinking when you pressed start even when it's fully charged. The third one came would not even charge properly. I think those are not quality products. Maybe i will try getting them directly from the manufacturer website instead and compare.

Erma
👍 0    👎 0

BlendJet Team
We're so sorry to hear that you've had some issues with your blenders. Please email support@blendjet.com so that we can see ...

---

★☆☆☆☆ **Verified Purchaser**                           6/6/2023

**Not a good investment**

This did not crush ice as advertised so there was always chunks left. It also stopped working right after about the 30 day mark. Very disappointing!

BN
👍 1    👎 0

---

★☆☆☆☆ **Verified Purchaser**                           7/31/2023

The arrow will not compliment each other that's why I returned it the next day since I can't use it.

Irenea
👍 0    👎 0

---

★☆☆☆☆ **Verified Purchaser**                           7/2/2023

**Stopped working within 3 months**

Bought this in March and it stopped charging in June.

Roy
👍 1    👎 0

BlendJet Team
We're so sorry to hear that your blender is not working as expected! Please send us an email to support@blendjet.com with a ...

See more

---

★☆☆☆☆ **Verified Purchaser**                           7/6/2023

**waste**

What a waste. And what amazing inflated computer generated positive reviews.



19.     As demonstrated above, Defendant was aware of the Product's Defect based on the sheer number of online negative reviews and reports from the CPSC. But Defendant did nothing about it. Instead, Defendant has decided to keep misrepresenting that the Product can blend "through anything in 20 seconds flat" while concealing the inferior and shoddy manufacturing components, and attendant safety risks, of the Product. While the Defect may manifest itself in different ways—such as the blades breaking or the battery overheating—each issue results from the same common problems with the Product and the same common manufacturing practices by Defendant. And the end result is also always the same: the Product is worthless because it is unfit and unusable as a blender, its sole purpose.

20.     Defendant's misleading and deceptive practices proximately caused harm to Plaintiff and the proposed class members who suffered an injury in fact and lost money or property as a result of Defendant's deceptive conduct.

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action on behalf of herself and all other similarly situated persons pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), and (b)(3). Specifically, the Classes are defined as:

22.     **Nationwide Class:** All persons in the United States who, during the maximum period of time permitted by law, purchased Defendant's Product primarily for personal, family or household purposes, and not for resale.

23.     **New York Subclass:** All persons residing in New York who, during the maximum period of time permitted by the law, purchased Defendant's Product primarily for personal, family or household purposes, and not for resale.

24.     The Classes do not include (1) Defendant, their officers, and/or its directors; or (2) the Judge to whom this case is assigned and the Judge's staff.

25.     Plaintiffs reserve the right to amend the above class definitions and add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

26.     ***Community of Interest***: There is a well-defined community of interest among members of the Classes, and the disposition of the claims of these members of the Classes in a single action will provide substantial benefits to all parties and to the Court.

27.     ***Numerosity***: While the exact number of members of the Classes is unknown to Plaintiffs at this time and can only be determined by appropriate discovery, upon information and belief, members of the Classes number in the millions. The precise number of the members of the Classes and their identities are unknown to Plaintiffs at this time but may be determined through discovery. Members of the Classes may be notified of the pendency of this action by

mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

28.     ***Existence and predominance of common questions of law and fact***: Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individuals of the Classes. These common legal and factual questions include, but are not limited to:

(a)  Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Product are deceptive;

(b)  whether Defendant misrepresented and/or failed to disclose material facts concerning the Product;

(c)  Whether Defendant fraudulently induced Plaintiff and the members of the Classes into purchasing the Product;

(d)  Whether Plaintiff and the members of the Classes have suffered damages as a result of Defendant's actions and the amount thereof;

(e)  Whether Plaintiff and the members of the Classes are entitled to statutory damages;

(f)  Whether Plaintiff and the members of the Classes are entitled to attorney's fees and costs.

29.     ***Typicality:*** The claims of the named Plaintiffs are typical of the claims of other members of the Classes in that the named Plaintiffs were exposed to Defendant's false and misleading marketing, purchased Defendant's Product containing the Defect, and suffered a loss as a result of those purchases.

30.     ***Adequacy***: Plaintiffs will fairly and adequately represent and protect the interests of the Classes as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiffs are

adequate representatives of the Classes because they have no interests which are adverse to the interests of the members of the Classes. Plaintiffs are committed to the vigorous prosecution of this action and, to that end, Plaintiffs have retained skilled and experienced counsel.

31.     Moreover, the proposed Classes can be maintained because they satisfy both Rule 23(a) and 23(b)(3) because questions of law or fact common to the Classes predominate over any questions affecting only individual members and that a Class Action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because:

(a) The expense and burden of individual litigation makes it economically unfeasible for members of the Classes to seek to redress their claims other than through the procedure of a class action;

(b) If separate actions were brought by individual members of the Classes, the resulting duplicity of lawsuits would cause members of the Classes to seek to redress their claims other than through the procedure of a class action; and

(c) Absent a class action, Defendant likely will retain the benefits of its wrongdoing, and there would be a failure of justice.

## CAUSES OF ACTION

### COUNT I
**Breach of Express Warranties
(On Behalf of Plaintiffs and the Nationwide Class)**

32.     Plaintiffs incorporate by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

33.     The State Warranty Statutes of the Nationwide Class members incorporate the obligations and rights outlined under the Uniform Commercial Code ("U.C.C.") § 2-301, *et seq.*

34.     Defendant is a "seller" as defined under U.C.C. § 2-103(1)(d).

35.     Plaintiffs and the Nationwide Class members are "buyers" as defined under U.C.C. § 2-103(1)(a).

36.     Defendant's Product constitutes goods as defined under U.C.C. § 2-105(1).

37.     U.C.C. § 2-607 is satisfied because Plaintiff Joseph provided Defendant a reasonable opportunity to cure the Product defects by sending Defendant a cure notice outlining those defects in full via certified mail on August 29, 2023, on behalf of himself and the Nationwide Class.

38.     U.C.C. § 2-313 provides a cause of action to buyers when sellers breach express warranties.

39.     Throughout its advertisements and marketing, Defendant expressly warranted that the Product can (1) blend "through anything in 20 seconds flat: ice, frozen fruit, leafy greens & more" and (2) that the Product "[l]asts for 15+ blends."

40.     Those statements became the basis of the bargains for Plaintiffs and the Nationwide Class members because they are factual statements that a reasonable consumer would consider material when purchasing a portable blender.

41.     Defendant breached these express warranties by delivering the Product which: (1) systematically fails to blend through ice and other solid food items; (2) is unable to blend "through anything" nowhere near the "20 seconds flat"; and (3) does not hold charge nowhere near "15+ blends."

42.     In so doing, Defendant breached U.C.C. § 2-313.

43.     As a direct and proximate result of Defendant's breach of its express written warranties, Plaintiffs and the Nationwide Class members have been damaged in an amount to be proven at trial.

## COUNT II
### Breach of Implied Warranties
### (On Behalf of Plaintiffs and the Nationwide Class)

44.     Plaintiffs incorporate by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

45.     The State Warranty Statutes of the Nationwide Class members incorporate the obligations and rights outlined under the Uniform Commercial Code ("U.C.C.") § 2-301, *et seq.*

46.     Defendant is a "seller" as defined under U.C.C. § 2-103(1)(d).

47.     Plaintiffs and the Nationwide Class members are "buyers" as defined under U.C.C. § 2-103(1)(a).

48.     Defendant's Product constitutes goods as defined under U.C.C. § 2-105(1).

49.     U.C.C. § 2-607 is satisfied because Plaintiff Joseph provided Defendant a reasonable opportunity to cure the Product defects by sending Defendant a cure notice outlining those defects in full via certified mail on August 29, 2023, on behalf of himself and the Nationwide Class.

50.     U.C.C. § 2-314 (1) creates an implied warranty of merchantability when a seller

15

"is a merchant with respect to goods of that kind."

51.     Defendant is a merchant as defined under U.C.C. § 2-104(1) because it deals in goods of the kind at-issue in this Complaint (*i.e.*, selling portable blenders).

52.     For goods to be merchantable, they must "pass without objection in the trade under the contract description" and be "fit for the ordinary purposes for which such goods are used." U.C.C. §§ 2-314(2)(a),(c).

53.     Defendant breached its implied warranties of merchantability by selling to Plaintiffs and the Nationwide Class members the Product whose Defect prevented it from performing the basic blending functions expected from blending machines. As such, Defendant's Product cannot "pass without objection" nor is fit for its "ordinary purposes" of blending food items.

54.     In so doing, Defendant breached U.C.C. §§ 2-314(2)(a) and (c).

55.     For goods to be merchantable, they must also "conform to the promises or affirmations of fact made on the container or label if any." U.C.C. §§ 2-314(2)(f).

56.     On the Product's marketing, Defendant promised and otherwise made affirmations of fact that the Product can (1) blend "through anything in 20 seconds flat: ice, frozen fruit, leafy greens & more" and (2) that the Product "[l]asts for 15+ blends."

57.     Defendant's Product did not conform to those promises and affirmations of fact because it: (1) systematically fails to blend through ice and other solid food items; (2) is unable to blend "through anything" nowhere near the "20 seconds flat"; and (3) does not hold charge nowhere near "15+ blends."

58.     In so doing, Defendant breached N.Y. U.C.C. § 2-314(2)(f).

59.     U.C.C. § 2-314 provides a cause of action to buyers when sellers breach express

warranties.

60.     As a direct and proximate result of Defendant's breach of its express written warranties, Plaintiffs and the Nationwide Class members have been damaged in an amount to be proven at trial.

## COUNT III
### Violation of State Consumer Protection Statues[7]
### (On Behalf of Plaintiffs and the Nationwide Class)

61.     Plaintiffs incorporate by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

62.     The Consumer Protection Statutes of the Nationwide Class members prohibit the use of deceptive, unfair, and misleading business practices in the conduct of trade or commerce.

63.     By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices by misrepresenting that the Product can (1) blend "through

---

[7] While discovery may alter the following, Plaintiff asserts that the states with similar consumer fraud laws under the facts of this case include but are not limited to: Alaska Stat. § 45.50.471, et seq.; Ariz. Rev. Stat. §§ 44-1521, et seq.; Ark. Code § 4-88-101, et seq.; Cal. Bus. & Prof. Code § 17200, et seq.; Cal. Civ. Code §1750, et seq.; Colo. Rev. Stat. Ann. § 6-1-101, et seq.; Colo. Rev. Stat. Ann. § 6-1-101, et seq.; Conn. Gen Stat. Ann. § 42- 110, et seq.; 6 Del. Code § 2513, et seq.; D.C. Code § 28-3901, et seq.; Fla. Stat. Ann.§ 501.201, et seq.; Ga. Code Ann. § 10-1-390, et seq.; Haw. Rev. Stat. § 480-2, et seq.; Idaho Code. Ann. § 48-601, et seq.; 815 ILCS 501/1, et seq.; Ind. Code § 24-5-0.5-2, et seq.; Kan. Stat. Ann. § 50-623, et seq.; Ky. Rev. Stat. Ann. § 367.110, et seq.; LSA-R.S. 51:1401, et seq.; Me. Rev. Stat. Ann. Tit. 5, § 207, et seq.; Md. Code Ann. Com. Law, § 13-301, et seq.; Mass. Gen Laws Ann. Ch. 93A, et seq.;  Mich. Comp. Laws Ann. § 445.901, et seq.; Minn. Stat. § 325F, et seq.; Mo. Rev. Stat. § 407, et seq.; Neb. Rev. St. §§ 59-1601, et seq.; Nev. Rev. Stat. § 41.600, et seq.; N.H. Rev. Stat. § 358-A:1, et seq.; N.J. Stat. Ann. § 56:8, et seq.; N.M. Stat. Ann. § 57-12-1, et seq.; N.Y. Gen. Bus. Law § 349, et seq.; N.C. Gen Stat. § 75-1.1, et seq.; N.D. Cent. Code § 51-15, et seq.; Ohio Rev. Code Ann. § 1345.01, et seq.; Okla. Stat. tit. 15 § 751, et seq.; Or. Rev. Stat. § 646.605, et seq.; 73 P.S. § 201-1, et seq.; R.I. Gen. Laws § 6-13.1- 5.2(B), et seq.; S.C. Code Ann. §§ 39-5- 10, et seq.; S.D. Codified Laws § 37-24-1, et seq.; Tenn. Code Ann. § 47-18-101, et seq.; Tex. Code Ann., Bus. & Con. § 17.41, et seq.; Utah Code. Ann. § 13-11-175, et seq.; 9 V.S.A. § 2451, et seq.; Va. Code Ann. § 59.1-199, et seq.; Wash. Rev. Code § 19.86.010, et seq.; W. Va. Code § 46A, et seq.; Wis. Stat. § 100.18, et seq.; and Wyo. Stat. Ann. § 40-12-101, et seq.

anything in 20 seconds flat: ice, frozen fruit, leafy greens & more" and (2) that the Product "[l]asts for 15+ blends."

64.     Despite those representations, however, the Product (1) systematically fails to blend through ice and other solid food items; (2) is unable to blend "through anything" nowhere near the "20 seconds flat"; and (3) does not hold charge nowhere near "15+ blends."

65.     Furthermore, Defendant intentionally concealed and omitted that the Product contained the Defect, making it unsuitable for its intended purpose (*i.e.*, to blend food) and otherwise creating safety hazards (such as chocking from shards of broken blades) and fire hazards (resulting from its defective charger and battery).

66.     The foregoing deceptive acts and practices were directed at consumers.

67.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the nature and value of the Product.

68.     As a result of Defendant's deceptive practices, Plaintiffs and the Nationwide Class members suffered an economic injury because they would not have purchased (or paid a premium for) the Product had they known the veracity of Defendant's misrepresentations and omissions of material facts.

69.     On behalf of themselves and the Nationwide Class members, Plaintiffs seek to recover their actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

## COUNT IV
### Violation of New York G.B.L. § 349
### (On Behalf of Plaintiff and the New York Subclass)

70.     Plaintiffs incorporate by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

71.     New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

72.     In its sale of Product throughout the state of New York, at all relevant times herein, Defendant conducted business and trade within the meaning and intendment of New York's General Business Law § 349.

73.     Plaintiffs and the New York Subclass members are consumers who purchased the Product from Defendant for their personal use.

74.     By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices by misrepresenting that the Product can (1) blend "through anything in 20 seconds flat: ice, frozen fruit, leafy greens & more" and (2) that the Product "[l]asts for 15+ blends."

75.     Despite those representations, however, the Product (1) systematically fails to blend through ice and other solid food items; (2) is unable to blend "through anything" nowhere near the "20 seconds flat"; and (3) does not hold charge nowhere near "15+ blends."

76.     Furthermore, Defendant intentionally concealed and omitted that the Product contained the Defect, making it unsuitable for its intended purpose (i.e., to blend food) and otherwise creating safety hazards (such as chocking from shards of broken blades) and fire hazards (resulting from its defective charger and battery).

77.     The foregoing deceptive acts and practices were directed at consumers.

78.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the nature and value of the Product.

79.     As a result of Defendant's deceptive practices, Plaintiffs and the New York Subclass members suffered an economic injury because they would not have purchased (or paid

a premium for) the Product had they known the veracity of Defendant's misrepresentations and omissions of material facts.

80.     On behalf of themselves and the New York Subclass members, Plaintiffs seek to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

## COUNT V
### Violation of New York G.B.L. §350
### (On Behalf of Plaintiff and the New York Subclass)

81.     Plaintiffs incorporate by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

82.     New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

83.     Defendant violated New York General Business Law § 350 by representing that the Product can (1) blend "through anything in 20 seconds flat: ice, frozen fruit, leafy greens & more" and (2) that the Product "[l]asts for 15+ blends." Despite those representations, however, the Product (1) systematically fails to blend through ice and other solid food items; (2) is unable to blend "through anything" nowhere near the "20 seconds flat"; and (3) does not hold charge nowhere near "15+ blends."

84.     Furthermore, Defendant intentionally concealed and omitted that the Product contained the Defect, making it unsuitable for its intended purpose (i.e., to blend food) and otherwise creating safety hazards (such as chocking from shards of broken blades) and fire hazards (resulting from its defective charger and battery).

85.     Defendant's misrepresentations and omissions have resulted in consumer injury or harm to the public interest.

86.     As a result of Defendant's false advertising, Plaintiffs and the New York Subclass

20

members suffered an economic injury because they would not have purchased (or paid a premium for) the Product had they known the veracity of Defendant' misrepresentations and omissions of material facts.

87.     On behalf of themselves and the New York Subclass members, Plaintiffs seek to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a)     For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiffs as representatives of the Classes; and naming Plaintiffs' attorneys as Class Counsel to represent the Classes;

(b)     For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

(c)     For compensatory, statutory and punitive damages in amounts to be determined by the Court and/or jury;

(d)     For prejudgment interest on all amounts awarded;

(e)     For an order of restitution and all other forms of equitable monetary relief; and

(f)     For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated September 6, 2023                              Respectfully submitted,

**GUCOVSCHI ROZENSHTEYN, PLLC**

By: <u>/s/ Adrian Gucovschi</u>
     Adrian Gucovschi, Esq.

Adrian Gucovschi
140 Broadway, Suite 4667
New York, NY 10005
Tel: (212) 884-4230
adrian@gr-firm.com

*Counsel for Plaintiffs and the Classes*